JAMES A. DUTTON *vs.* GEORGE A. SIMMONS.

Waldo, 1874.—April 11, 1876.

*Officer.*

The certificate by an officer to the register of deeds of an attachment of the real estate of Henry "M." Hawkins, when the name of the defendant in the writ is Henry "F." Hawkins, is such a misdescription of the person sued as will render the attachment void.

The officer's return upon the writ, that he has duly made to the register of deeds the certificate (as required by law,) is only *prima facie* evidence of the facts therein stated, and his return may be contradicted and controlled by the production of the certificate itself.

ON REPORT.

REAL ACTION.

Both parties claimed through Henry F. Hawkins; the plaintiff, directly by deed; the defendant by a deed from Bradstreet M. Hawkins, levying judgment creditor of Henry F. The levy, if all proceedings were regular, gave the earlier title. The officer's return upon the back of the writ, *Bradstreet M. Hawkins* v. *Henry F. Hawkins,* showed an attachment of the real estate of the defendant seasonably made, the parties correctly described, and the return required by R. S., c. 81, § 56, to the registry; but the plaintiff, against the defendant's objection, put in a copy of the officer's return left with the register of deeds, and the indorsement thereon, and the entry of the same attachment in the attachment book,

wherein it appeared that the officer having the writ in that case, in his return to the registry, gave the name of the defendant as Henry "M." Hawkins, instead of his true name, as it appeared in the writ, Henry "F." Hawkins. This error raised the contention in the case which after the evidence was out was made law upon so much thereof as was legally admissible.

*J. Williamson,* for the plaintiff.

*N. Abbott,* for the defendant.

PETERS, J. Both parties claim title to the demanded premises through Henry F. Hawkins. The deed to the demandant was prior to the levy of the tenant, but subsequent to the attachment on which the levy was made. The demandant, however, claims that the attachment was defective, because in the return of the officer to the registry of deeds, the defendant in that suit was described as Henry "M." Hawkins, when his true name was Henry "F." Hawkins, by which latter name he was sued. The question is, therefore, whether the misdescription is such as to render the attachment void.

The "names of the parties" to the suit were required to be returned. Can the name Henry "M." Hawkins be taken to mean Henry "F." Hawkins? Formerly, but one christian name was known to the law. The omission or insertion of a middle name, or its initial, was regarded as immaterial. Such is, probably, the law of the supreme court of the United States, and of many, if not most, of the state courts in this country at the present day. *Games* v. *Stiles,* 14 Peters, 322. *People* v. *Collins,* 7 Johns., 549. But there has been a growing dissatisfaction with the doctrine of the ancient cases upon this subject; and in this state (and Massachusetts) the old doctrine must be regarded both by the precedents and practice as overruled. In Bishop's Crim. Law, Misnomer, may be found cited many of the cases upon the question *pro* and *con.* The English courts have also long since departed from the old rule, under the influence of some of their statutes of amendment. In *Com.* v. *Hall,* 3 Pick., 262, "Charles" Hall and "Charles James" Hall, are regarded as different names. *Com.* v. *Shearman,* 11 Cush., 546, decided that "George" Allen and

"George E." Allen are not the same name. "Nathan" Hoard and "Nathan S." Hoard are not the same name. *Com.* v. *McAvoy,* 16 Gray, 235. There are many other Massachusetts cases either directly or indirectly supporting the same view. In this state the cases of *State* v. *Homer,* 40 Maine, 438, and *State* v. *Dresser,* 54 Maine, 569, are to the same effect. It is also with us well settled that a person's middle name may be represented by its initial letter instead of writing the name in full. That is almost a universal practice. There was a distinction in some of the English cases depending on the fact whether the middle initial was a vowel or not. If it was, it was regarded as a name of itself. But if a consonant it was not a name. This nice distinction was grounded upon the idea that a vowel can be sounded by itself, but that a consonant cannot be sounded without the aid of a vowel. But this attempted distinction did not receive much recognition in the courts of that country, and has received none in the American courts, that we are aware of. *Arbouin* v. *Willoughby,* 1 Marsh, (E. C. L.,) 477. *Lindsey* v. *Wells,* 3 Bing., N. C., 777. *The Queen* v. *Dale,* 17 Ad. & E., N. S., 63. *Kinnersley* v. *Knott,* 7 Mann. G. & S., 980. *Regina* v. *Avery,* 18 Ad. & E. N. S., 576. See *Kelly* v. *Laws,* 109 Mass., 395.

The tenant claims that the name is described in the return with substantial correctness, and that the error is one of inaccuracy only and not fatal to the validity of the attachment. He would have had, probably, less difficulty to contend with, had the error been the omission of the middle letter, (as if written Henry Hawkins,) or if only the initial of the Christian name had been written, but correctly given, (as H. F. Hawkins). In such case perhaps the omission could have been supplied by parol proof. A person may have different names by reputation. Proceedings have been sustained in important cases where a person is described in either one or the other of the above ways. *State* v. *Taggart,* 38 Maine, 298. *Hubbard* v. *Smith,* 4 Gray, 72. *Collins* v. *Douglass,* 1 Gray, 167. *Commonwealth* v. *Gleason,* 110 Mass., 66. *Regina* v. *Avery, supra.* But those are cases where the description of the person is said to be inaccurate or incomplete

merely. Lord Campbell, C. J., in one of the cases before cited, says: "It may be said, initials are a short way of stating the Christian name." But the description of Hawkins in the officer's return was not a diminished one, correct as far as it went, and inaccurate merely, but it was essentially and positively false. It may have been caused by a slip of the pen, but as there is no power of amendment in the case we see no remedy for it. It is not a misdescription so patent upon the face of the papers as to correct itself. *Nye* v. *Drake*, 9 Pick., 35. *Litchfield* v. *Cudworth*, 15 Pick., 23. *Slasson* v. *Brown*, 20 Pick., 436. *Commonwealth* v. *Mehan*, 11 Gray, 321. *Frost* v. *Paine*, 12 Maine, 111. We think that Henry "F." Hawkins and Henry "M." Hawkins are not the same name.

Deciding the foregoing point as we do, brings before us another question, and one of much practical importance. The officer's certificate to the registry of deeds, was admitted in evidence to contradict his return upon the writ. This was objected to. Was it admissible for that purpose? We think it was. It has been settled that it was the officer's duty to certify on the writ the fact that he had filed an attested copy with the register of deeds, and that without it the attachment would be void. *Carleton* v. *Ryerson*, 59 Maine, 438. (See 1 Allen, 61.) It is upon this ground that it is now contended that the evidence admitted should have been excluded. The argument is, that the officer's statement in his return upon the writ being necessary, it must be conclusive. There is no doubt that the estoppel must apply to the demandant in this case, if it does to the defendant in the suit where the attachment was made. If it applies at all, it must affect not only that defendant but his privies, and, as the demandant took his deed after the attachment, he would stand in the present suit in that attitude. *Bott* v. *Burnell*, 11 Mass., 163. *Campbell* v. *Webster*, 15 Gray, 28. *Angier* v. *Ash*, 26 N. H., 99.

The precise point in issue may never have been decided in this state. It was so understood by Justice Kent in *State* v *Leach*, 60 Maine, 58, p. 74. Still, we think several reported cases exhibit a strong leaning upon the point if not decisive of it. In *Nash* v. *Whitney*, 39 Maine, 341, it was held, (among other rea-

sons,) that an attachment was a nullity because the certificate filed in the registry did not contain the statements as required by law. The facts of the case are rather vaguely stated, and the evidence admitted was not (as here) objected to, although the point was made as to the conclusiveness of the officer's return on the writ. In *Kendall* v. *Irving*, 42 Maine, 339, Tenney, C. J., expressed an opinion that the attested copy left with the register would be the correct source of evidence from which the court could conclude whether an effectual attachment was made. In *Lincoln* v. *Strickland*, 51 Maine, 321, a certificate to the registry was received in evidence and passed upon by the court, but the case does not show what the officer's return on the writ was, or whether the admitted evidence was objected to or not. In *Farrin* v. *Rowse*, 52 Maine, 409, an officer's certificate filed with the register of deeds was decided to be fatally defective, but the report of that case does not show whether the certificate was admitted in evidence with or without objection.

But upon principle, we are satisfied, the officer's return on the writ cannot control the certificate made and filed by him in the registry of deeds. It is undoubtedly a general rule of the common law, that the return of a sheriff on a process, except in relation to himself when sued, is absolutely conclusive. The rule is very general, but not universal. An averment, in rare instances, is permitted against the return of a sheriff, to avert certain hardships that would result from the general rule, as described in *Lewis* v. *Blair*, 1 N. H., 68. In examining the origin of the general rule, it will be seen that several causes in the cases (old and new) are assigned for it. We think none of them sufficient to require us "to give effect to an admitted falsehood," in the case at bar. One reason given (in old cases) is, that "the sheriff is a sworn officer to whom the law gives credit." But his return on the writ has no more the sanction of an oath, than his return to the registry has. If one return should be credited, so should the other be; and the manifestly correct one should control. Another reason assigned is, that an officer's return becomes "a parcel of the record," and the point is, that a record should not be contradictable by parol. *Gardner* v. *Hosmer*, 6 Mass., 325. But this argument fails here,

for the reason that both the return to the registry, and the return upon the writ are of the nature of record evidence, and the return to the registry is the original of the two, the other being a mere certificate of what was done before. Besides, an officer is not permitted to make contradictory returns. It is of the earliest law, that a sheriff "cannot make a return contrary to a record, or contrary to his former return on record ; as if he return upon a *venire facias* twelve jurors, he cannot say upon his *distringas,* that one *nil habet.*" See Com. Dig., Retorn, (E. 4.) where other illustrations are given. The present is an analogous case thereto to some extent. Here the officer returns to the registry in five days. He necessarily makes his return on the writ afterwards. Should he be allowed to falsify his prior (*quasi*) record ? Another reason anciently given, was upon the ground of "general convenience." If a return was traversable, "extreme inconvenience would result therefrom." This argument is perfectly convincing so far only as parol evidence is concerned. The demandant here seeks to defend, and not impeach a record. The case then not falling within the reason of the rule which excludes all contradiction of an officer's return, the rule does not apply.

The argument for this conclusion is strengthened by various considerations. The statute is mandatory. The return filed in the registry is to be the foundation on which the attachment rests. It is in terms made a condition precedent to the validity of the attachment. The object of the statute is, that the records at the registry of deeds shall of themselves afford satisfactory evidence whether any incumbrance exists upon an estate or not. Other statutory provisions are based on this idea. An attachment may be dissolved by a plaintiff, or vacated by a court, by a certificate or bond filed in the registry. By the act of 1873, (c. 128,) a recorded deed must take precedence of an unrecorded attachment. It is a notable fact, that the original act of 1838, provided that the officer's return, that he had filed the certificate in the registry of deeds, should be "sufficient" evidence that he had done so. That would be *prima facie* evidence, and not conclusive. Undoubtedly, the return on the writ is *prima facie* evidence of the truth of the facts legitimately stated therein.

The tenant sets up that the demandant's deed was obtained by fraud. That is not a question, ordinarily, for our inquiry. But the case furnishes no satisfactory evidence of fraud.

*Judgment for demandant.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.